# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.                                                                                            NO. 3:16-CR-00046

HUGO RAMON-SALAZAR

## MEMORANDUM OPINION AND ORDER

This criminal action is before the Court on the motion to dismiss of Hugo Ramon-Salazar. Doc. #22. Because Ramon-Salazar's previous deportation proceedings were not fundamentally unfair, the motion will be denied.

## I
## Factual and Procedural History

On February 6, 1992, Ramon-Salazar pleaded nolo contender to the offense of aggravated assault with a deadly weapon in Orange County, Florida.[1] At the time he entered the plea, Ramon-Salazar had resided in the United States for approximately seven years, and had obtained lawful permanent status. Ramon-Salazar was sentenced to thirty months in prison but was released after approximately fourteen months.

Sometime after his release, the Immigration and Naturalization Service initiated deportation proceedings against Ramon-Salazar. On March 1, 1993, an immigration judge ("IJ") in Oakdale, Louisiana, issued an order granting Ramon-Salazar release from custody under a bond of twenty-thousand dollars. In considering whether to grant him release, the IJ noted that Ramon-Salazar's "criminal conviction makes him ineligible for relief from deportation." Ramon-Salazar was ordered deported on March 8, 1993, and was actually deported sometime

---

[1] "For purposes of reviewing a motion to dismiss an indictment, the Court assumes the truth of what the indictment alleges. A Court can also consider facts agreed upon by the parties." *United States v. LeTourneau*, 534 F.Supp.2d 718, 719 (S.D. Tex. 2008) (internal citations omitted).

that year. During his deportation proceedings, Ramon-Salazar was not advised of applicable avenues of relief, including the possibility of relief under § 212(c) of the Immigration and Nationality Act, which provided a discretionary waiver of removal for aliens convicted of aggravated felonies.[2]

On April 20, 2016, a grand jury returned a one-count indictment in the United States District Court for the Northern District of Mississippi charging Ramon-Salazar with re-entering the United States after having been deported in 1993, in violation of 8 U.S.C. § 1326(a). Doc. #1. On August 29, 2016, Ramon-Salazar filed a motion to dismiss the indictment. Doc. #22. The United States responded on September 8, 2016, and Ramon-Salazar replied on September 14, 2016. Doc. #23; Doc. #26.

## II
## Analysis

In his motion to dismiss, Ramon-Salazar argues that the 1993 deportation proceedings were "fundamentally unfair and violated his right to due process" and that, therefore, the instant indictment must be dismissed. Doc. #22 at 2–3.

"[D]ue process requires collateral review of deportation orders used in § 1326 prosecutions." *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002) (citing *United States v. Mendoza-Lopez*, 481 U.S. 8298 (1987)). The scope of a collateral attack is governed by § 1326(d), which provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

---

[2] Section 212(c) relief was later abolished by the Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigrant Responsibility Act. *United States v. Lopez-Ortiz*, 313 F.3d 225, 227 (5th Cir. 2002).

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.

As recognized in *United States v. Villanueva-Diaz*, 634 F.3d 844 (5th Cir. 2011), § 1326(d):

> effectively codifies the Supreme Court's decision in *United States v. Mendoza–Lopez*, which, as interpreted by [Fifth Circuit] precedent, permits a collateral constitutional challenge if the alien can "establish that (1) the prior hearing was 'fundamentally unfair'; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice.

*Id.* at 849–50 (5th Cir. 2011) (internal citations omitted). Practically, "the alien must establish (1) that the removal hearing was fundamentally unfair, (2) that the hearing effectively eliminated his right to challenge the hearing by means of judicial review of the removal order, (3) that he was prejudiced by the procedural deficiencies at the hearing, and (4) that he exhausted any administrative remedies that were available to challenge the order." *United States v. Gonzalez-Lopez*, 407 F. App'x 827, 827 (5th Cir. 2011) (citing *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002)).

In its response, the United States argues that Ramon-Salazar failed to exhaust his administrative remedies, the deportation proceedings were not fundamentally unfair, and Ramon-Salazar was not deprived of the opportunity for judicial review.

"Fundamental fairness is a question of procedure. Removal hearings are civil proceedings, not criminal; therefore, procedural protections accorded an alien in a removal proceeding are less stringent than those available to a criminal defendant. *Lopez-Ortiz*, 313 F.3d at 230. Generally, "due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Id*.

In his motion, Ramon-Salazar argues that his deportation proceedings were fundamentally unfair because he "was not advised of his right to seek relief from deportation; in fact, he was misinformed that because of his criminal conviction, he was ineligible for any and all relief." This argument is clearly foreclosed by Fifth Circuit precedent.

In *Lopez-Ortiz*, the Fifth Circuit held that "[b]ecause eligibility for § 212(c) relief is not a liberty or property interest warranting due process protection[, an] Immigration Judge's error in failing to explain ... eligibility [for § 212(c) relief] does not rise to the level of fundamental unfairness." 313 F.3d at 231. In his reply brief, Ramon-Salazar argues that *Lopez-Ortiz* is distinguishable from this case because here "the immigration judge did not simply decline to discuss the possibility of 212(c) relief; rather, he specifically and erroneously advised Mr. Ramon-Salazar that he was not eligible."

In *United States v. Garrido*, the Fifth Circuit held that *Lopez-Ortiz* is binding where, as here, a defendant argues fundamental unfairness based on an IJ's active misrepresentation about an alien's eligibility for § 212(c) relief. 519 F. App'x 241, 242–43 (5th Cir. 2013) (rejecting argument that *Lopez-Ortiz* recognized a "difference between *passively* failing to inform a defendant of eligibility for relief and *actively* misinforming a defendant about the availability of relief") (emphasis in original). In light of this authority, the Court must conclude that Ramon-Salazar's deportation proceedings were not fundamentally unfair and that, therefore, his motion to dismiss must be denied.[3]

### III
### Conclusion

For the reasons above, Ramon-Salazar's motion to dismiss [22] is **DENIED**.

---

[3] Having found that the deportation proceedings were not fundamentally unfair, the Court need not reach the remaining elements of Ramon-Salazar's challenge.

**SO ORDERED**, this 14th day of September, 2016.

<u>**/s/ Debra M. Brown**</u>
**UNITED STATES DISTRICT JUDGE**